UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| HUMBERTO VIEIRA<br>on behalf of himself and all<br>others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN CARPET SOUTH, INC.<br><br>Defendant. | CIVIL ACTION NO: 1:19-cv-12181 |

**CLASS AND COLLECTIVE ACTION COMPLAINT**

**INTRODUCTION**

1. This is an action brought on behalf of individuals who are current and former flooring and carpet installers of Defendant American Carpet South, Inc. (hereinafter "ACS") and were classified as independent contractors rather than employees. While Plaintiff worked out of ACS's warehouse in Hudson, New Hampshire, he lived in Lowell, Massachusetts and performed the majority of his work in Massachusetts. ACS provides flooring and carpet installation services to its own customers, as well as to customers who purchase flooring or carpet through Home Depot. Plaintiff alleges that although ACS classified him and a class of similarly situated individuals as independent contractors, they were in fact ACS's employees under Massachusetts law, G.L. c. 149, § 148B and (in the alternative) New Hampshire law, N.H. Rev. Stat. § 275:42. Further, as a result of said misclassification, Plaintiff individually and a group of similarly situated employees have had deductions taken from their pay, in violation of G.L. c. 149, § 148,

1

and (in the alternative) N.H. Rev. Stat. § 275:48, and have not been paid for all hours worked, in violation of G.L. c. 149, § 148, have worked far in excess of 40 hours per week without receiving overtime, in violation of G.L. c. 151, § 1A and (in the alternative) N.H. Rev. St. § 279:21. Plaintiff also asserts claims of quantum meruit and unjust enrichment under Massachusetts common law. Plaintiff asserts claims under Massachusetts law on behalf of all those who performed work for ACS in the Commonwealth of Massachusetts, seeking remedies for statutory and common law violations resulting from this misclassification.

2. Plaintiff also asserts a claim under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* on behalf of himself and all other similarly situated who worked out of any of ACS's other locations in New England, alleging that ACS violated the FLSA's overtime provision.

3. In the alternative to Plaintiff's claims under Massachusetts law, because Plaintiff and similarly situated individual have also performed work in New Hampshire, Plaintiff alleges that he was misclassified under New Hampshire law, N.H. Rev. Stat. § 275:42, and asserts class action claims under New Hampshire law on behalf of all those who performed work for ACS in the State of New Hampshire for ACS's failure to pay overtime, unlawful deductions, and failure to reimburse expenses. Plaintiff also asserts claims of quantum meruit and unjust enrichment under New Hampshire common law.

**PARTIES**

4. Plaintiff Humberto Vieira is an adult resident of Lowell, Massachusetts. Since approximately May 15, 2018, Vieira has performed flooring and carpet installation services on behalf of ACS in Massachusetts and in New Hampshire. During the relevant time, he was ACS's

employee as that term is defined in M.G.L. c. 149, § 148B, and in the alternative, N.H. Rev. Stat. § 275:42, as well as the FLSA.

5. The above-named Plaintiff brings this action on his own behalf and on behalf of all similarly-situated individuals.

6. Defendant American Carpet South, Inc. is a corporate entity with its headquarters in Passaic, New Jersey. American Carpet South conducts business through facilities in Massachusetts, New Hampshire, Connecticut, Maine, Maryland, New Jersey, New York, Pennsylvania, Vermont, and Virginia.

7. Defendant American Carpet South, Inc. is engaged in interstate commerce and employs individuals engaged in interstate commerce and is therefore covered by the FLSA, and it is an "employer" as that term is defined in N.H. Rev. Stat. § 275:42.

## JURISDICTION AND VENUE

8. The Court has original jurisdiction over the FLSA claims asserted in this matter pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331.

9. The Court has supplemental jurisdiction over the Massachusetts claims, and in the alternative the New Hampshire claims, pursuant to 28 U.S.C. § 1367.

10. Venue in this forum is proper pursuant to 28 U.S.C. §§ 1391(a) and (c), because ACS conducts business in Massachusetts and is subject to personal jurisdiction in this District.

## FACTS

11. ACS is an installer of carpet and flooring. ACS has a contract with Home Depot to perform installation services for Home Depot's customers who purchase flooring or carpeting at Home Depot Stores. ACS also has its own customers for whom it performs flooring and carpet installation services. ACS operates out of twenty-eight (28) warehouses in Massachusetts, New

Hampshire, Connecticut, Maine, Maryland, New Jersey, New York, Pennsylvania, Vermont, and Virginia.

12. Plaintiff has worked for ACS since approximately May 15, 2018, installing flooring and carpet on ACS's behalf.

13. Plaintiff reports to ACS's warehouse located in Hudson, New Hampshire each day to load up the supplies and product that will be installed for ACS's customers, and the vast majority of the jobs Plaintiff has completed for ACS have been in Massachusetts. Approximately thirty (30) contractors operate out of ACS's Hudson, New Hampshire warehouse. ACS also has warehouses in Springfield, Massachusetts, Bangor and Westbrook, Maine, and Colchester, Vermont.

14. In order to provide its flooring and carpet installation services ACS utilizes individuals, such as Plaintiff, who ACS designates as independent contractors, as opposed to employees.

15. ACS asserts on its website that it is the "premiere flooring installation services company on the East Coast," and that "[y]ou won't find a flooring installation company that is more serious about what it does and about getting it done right." ACS also asserts that it operates "28 warehouse locations in nearly every state from Maine to Virginia" and utilizes "1,200+ Sub-contractors."

16. Plaintiff and other installers perform carpet and flooring installation services on behalf of ACS, thereby providing an integral service to the flooring and carpeting installation business of ACS. Plaintiff's services are within ACS's usual course of business.

17. Each day, Plaintiff must report to ACS's warehouse in Hudson, New Hampshire to load the flooring and carpet product into his van. Plaintiff is required either to arrive at the warehouse by 6:00 AM to load up the product that will be installed that day, or to report to the

warehouse after the day's jobs have been completed to load up for the next day. Loading can take anywhere from thirty (30) minutes to two (2) hours. The installers were not compensated for this time.

18. ACS provides schedules to the installers when they arrive at the warehouse in order to load up the product. Plaintiff and the other installers are given multiple work orders each day and are required for the most part, to complete said orders each day. The schedules that ACS provides to the installers sets time-windows during which they are supposed to arrive to each customer's house and complete the job. Plaintiff has been required to complete anywhere from two (2) to (4) jobs each day.

19. Upon information and belief, the terms and conditions of each installer's Independent Contractor Agreement are the same in all material respects.

20. ACS's Independent Contractor Agreements are adhesion contracts drafted exclusively by ACS. ACS does not negotiate the material terms of the Independent Contractor Agreements with the installers, who are required to sign the agreements on a "take-it-or-leave-it" basis.

21. Through the Independent Contractor Agreements and other policies, ACS has the right to control, and in fact exercises substantial control over the work performed by the installers.

22. The control retained and exercised by ACS includes, but is not limited to, the fact that:

    a. ACS employs managers who have supervisory and disciplinary authority over the installers.

    b. ACS requires the Plaintiff and other installers to comply with ACS's instructions in terms of written and unwritten policies, procedures, and

        directives regarding Plaintiff's duties. ACS instituted operation standards and installation standards.

- c. ACS requires Plaintiff to call in to a dispatcher at ACS after the completion of each job. Moreover, if Plaintiff does not have cell service, ACS requires Plaintiff to ask to use the customer's phone to call in to ACS.

- d. ACS, in its own discretion, sets Plaintiff's schedule and the time-windows in which he must complete each job.

- e. ACS conducts all of the billing and invoicing work. ACS and/or Home Depot bills the customers directly, and Plaintiff has no control over who the customer will be, what prices to charge, or when the installations will be complete.

- f. ACS requires Plaintiff to report to its warehouse in Hudson, New Hampshire at least once per day.

- g. Plaintiff cannot take time off without providing at least a week's notice to ACS.

- h. The Independent Contractor Agreement requires the installers to warrant the jobs they do for a year, and if a customer complains about the work within that period, ACS imposes chargebacks on the installers. ACS often contacts customers near the completion of the warranty period to ask whether they have any complaints regarding the installer's work.

- i. ACS retains the right to terminate the installers with or without cause.

- j. After an installer completes a job, ACS sometimes sends another installer to inspect the work that has been done, and if ACS is not satisfied with the work, it imposes chargebacks on the compensation of the installer who completed the job.

- k. If a problem arises during an installation, the installer is required to call ACS and inform a dispatcher or manager.

23.     Plaintiff and the other installers are required to wear a shirt embossed with the ACS logo when performing installations, which they must purchase from ACS.

24. ACS, and not the installers, determines the cost and the charge for the carpet or flooring installation. Plaintiff cannot determine what will be charged to ACS's customers.

25. The installers are paid a rate (unilaterally determined by ACS) based on the square footage of installed product. This rate fluctuates depending on the amount of product installed and other factors.

26. Plaintiff and other installers do not have a significant opportunity for profit or loss based on managerial skill.

27. The carpeting and flooring installation work that Plaintiff and other installers perform for ACS does not require a high degree of skill and independent initiative. Plaintiff did not receive specialized training from ACS prior to beginning his work.

28. On a typical week, installers such as Plaintiff work at least fifty (50) to sixty (60) hours per week installing flooring and carpet for ACS. Plaintiff typically works six (6) days per week, from Monday to Saturday.

29. Despite regularly working more than forty (40) hours per week, and usually fifty (50) to (60) hours per week, ACS has not paid Plaintiff an overtime premium for any hours worked in excess of forty (40) each week.

30. In addition, the use of independent contractors by ACS allows ACS to reduce its normal business expenses, by shifting the expenses to the installers. For example, the installers are required to provide their own vehicles and smart phones but are not reimbursed for their use. The installers are also required to purchase their own tools (such as a hammer and a tool for melting carpet seams) and other supplies used to install flooring and carpet such as nails and fittings. Nevertheless, Plaintiff's and other installers' investment is minor compared to the investment that ACS has made in its business.

31. ACS does not provide workers' compensation insurance to the installers and instead requires them to purchase their own. The installers must also purchase commercial general liability, automotive liability insurance, employers liability insurance, and commercial excess liability coverage, with minimum coverages set by ACS.

32. ACS has regularly imposed chargebacks on Plaintiff's compensation. If a customer complains to ACS after a job, ACS typically sends out a different installer to fix the installation and imposes a chargeback on the original installer. Sometimes, after the job is done, ACS will call the customer to solicit feedback on the installer, and if the customer gives a negative review, ACS imposes a chargeback on the installer's compensation.

33. ACS also deducts various amounts from the pay of Plaintiff and other installers. For example, the Independent Contractor agreement requires the installers to submit a $5,000 escrow payment, which ACS deducts from their pay.

34. Plaintiff and other installers have a high degree of permanency at ACS, most working there for months or years at a time.

35. The installers are not customarily engaged in an independently established trade, occupation, profession, or business of the same nature as the services they provide to ACS. Based on all the hours that ACS requires Plaintiff to spend performing installations, there is little or no time left for Plaintiff to make deliveries for any other company besides ACS. Plaintiff and the other installers are economically dependent on ACS.

36. ACS's misclassification of its installers as independent contractors and the additional violations of the FLSA, Massachusetts law, and in the alternative, New Hampshire law, were willful and undertaken in bad faith.

37. Plaintiff submitted a complaint to the Massachusetts Attorney General Fair Labor Division and has received a private right of action letter.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

38. Plaintiff brings this action under Federal Rule of Civil Procedure 23 on behalf of all individuals who, either individually or through a corporate entity, personally perform or have performed flooring and carpet installation services in Massachusetts pursuant to an Independent Contractor Agreement.

39. In the alternative, Plaintiff brings this action under Federal Rule of Civil Procedure 23 on behalf of all individuals who, either individually or through a corporate entity, personally perform or have performed flooring and carpet installation services in New Hampshire pursuant to an Independent Contractor Agreement.

40. The members of the class are so numerous that joinder of all of them is impracticable, and treatment of a class action is the superior method to adjudicate the class members' claims. Upon information and belief, there are approximately 80-100 members of the putative class.

41. Plaintiff's claims are typical of the claims of all putative class members, because all members of the putative class were subject to the same unlawful practices.

42. ACS engages in a common course of conduct that violated the legal rights of Plaintiff and other installers. There are numerous material questions of law or fact common to the class that will necessarily predominate the Court's analysis of Plaintiff's claims, including primarily whether Plaintiff and other installers were ACS's employees rather than independent contractors under G.L. c. 149, § 148B, or in the alternative, N.H. Rev. Stat. § 275:42, whether ACS made

unlawful deductions from Plaintiff's and other installer's pay, and whether ACS committed overtime violations.

43. Plaintiff's claims are typical of the claims belonging to absent installers. Plaintiff and other installers are similarly-situated employees who performed the same work under the same conditions, were ACS's employees under Massachusetts law, or in the alternative, New Hampshire law, and suffered the same type of harm resulting from ACS's unlawful conduct.

44. The named Plaintiff and class counsel will fairly and adequately represent the interests of the class.

45. Plaintiff's FLSA claims should proceed as a New England collective action, encompassing a class of individuals who performed work for ACS in Massachusetts, New Hampshire, Vermont, and Maine, because Plaintiffs and other installers in New England worked pursuant to the common policy described above under which ACS misclassified the installers as independent contractors, and did not pay any overtime premium when the installers worked more than forty hours per week. Therefore, the installers are "similarly situated" as that term is defined in 29 U.S.C. § 216(b).

## COUNT I
## FAIR LABOR STANDARDS ACT – FAILURE TO PAY OVERTIME
## (INDIVIDUAL AND COLLECTIVE ACTION)

46. Plaintiff repeats and realleges each and every allegation above as if restated herein verbatim.

47. ACS's conduct in failing to pay its installers time-and-a-half their regular rate for all hours worked in excess of forty per week violates the FLSA, 29 U.S.C. § 207. ACS's

violation of the FLSA has been willful and done in bad faith in that it knew or showed reckless disregard for whether its actions were unlawful under the FLSA.

48. This claim is brought on behalf of a class of similarly situated individuals consisting of ACS installers who performed work in New England, in the states of Massachusetts, New Hampshire, Vermont, and Maine, who may choose to opt in to this case, pursuant to 29 U.S.C. § 216(b).

49. Plaintiff and other similarly situated installers are entitled to back wages at the rate of one-and-a-half times their regular rate of pay for all overtime hours worked in excess of forty hours per week, pursuant to 29 U.S.C. § 216(b). Plaintiff and other installers are also entitled to liquidated damages equal to the amount of unpaid overtime due to them under the FLSA.

50. Plaintiff and other similarly situated installers are also entitled to an award of reasonable attorneys' fees and costs incurred in prosecuting this action, pursuant to 29 U.S.C. § 216(b).

## COUNT II
## MASSACHUSETTS WAGE ACT
## (G.L. c. 149, § 148)
## (INDIVIDUAL AND CLASS ACTION)

51. Plaintiff repeats and realleges each and every allegation above as if restated herein verbatim.

52. The conduct of ACS as set forth above constitutes an unlawful refusal to pay wages, in that ACS did not pay Plaintiff and other installers for all hours worked in violation of G.L. c. 149, § 148.

53. Additionally, in requiring Plaintiff and the other installers to bear the costs incident

to ACS's business expenses, and by making unlawful deductions from their pay, ACS has violated G.L. c. 149, § 148.

54. Plaintiff and the putative class are entitled to damages in an amount to be proven at trial. Plaintiff and the putative class are also entitled to treble damages and reasonable attorneys' fees and costs.

55. Plaintiff asserts these claims under G.L. c. 149, § 150.

## COUNT III
## MASSACHUSETTS OVERTIME LAW
## (G.L. c. 151, § 1A)
## (INDIVIDUAL AND CLASS ACTION)

56. Plaintiff repeats and realleges each and every allegation above as if restated herein verbatim.

57. By failing to pay Plaintiff and other installers time-and-a-half for hours in excess of forty per week, ACS has violated G.L. c. 151, § 1A.

58. Plaintiff and the putative class are entitled to damages in an amount to be proven at trial. Plaintiff and the putative class are also entitled to treble damages and reasonable attorneys' fees and costs.

59. Plaintiff asserts this claim pursuant to G.L. c. 151, § 1B.

## COUNT IV
## QUANTUM MERUIT - MASSACHUSETTS
## (INDIVIDUAL AND CLASS ACTION)

60. Plaintiff repeats and realleges each and every allegation above as if restated herein verbatim.

61. Plaintiff and other installers have been deprived by ACS of the fair value of their

services, as described above, and are, therefore, entitled to recover *in quantum meruit*, the value of their services pursuant to the common law of Massachusetts.

62. Plaintiff and the putative class are entitled to damages in an amount to be proven at trial.

### COUNT V
### UNJUST ENRICHMENT - MASSACHUSETTS
### (INDIVIDUAL AND CLASS ACTION)

63. Plaintiff repeats and realleges each and every allegation above as if restated herein verbatim.

64. As a result of ACS's conduct as described above, ACS unjustly enriched itself to the detriment of Plaintiff and other installers in violation of the common law of Massachusetts. Such unjust enrichment includes ACS requiring Plaintiff and other installers to purchase their own worker's compensation insurance, liability insurance, automotive insurance, and the other deductions described above.

65. Plaintiff and the putative class are entitled to damages in an amount to be proven at trial.

### COUNT VI (IN THE ALTERNATIVE)
### N.H. REV. STAT. § 275:48 - UNLAWFUL WITHHOLDING AND
### DEDUCTIONS FROM WAGES
### (INDIVIDUAL AND CLASS ACTION)

66. Plaintiff repeats and realleges each and every allegation above as if restated herein verbatim.

67. ACS routinely diverted and withheld portions of Plaintiff's and other installers' wages.

68. These deductions constituted a violation of in violation of N.H. Rev. Stat. § 275:48

because they were not for the benefit of ACS's employees, nor were they supported by appropriate written authorization.

69. Plaintiff and other installers are entitled to recover the unpaid wages, including liquidated damages and attorney's fees, and costs pursuant to N.H. Rev. Stat. § 275:53.

**COUNT VII (IN THE ALTERNATIVE)**
**N.H. REV. ST. § 275:57 - REIMBURSEMENT OF EMPLOYEE EXPENSES**
**(INDIVIDUAL AND CLASS ACTION)**

70. Plaintiff repeats and realleges each and every allegation above as if restated herein verbatim.

71. ACS required Plaintiff and other installers to incur expenses in connection with their employment.

72. ACS failed to reimburse Plaintiff and other installers for these expenses in violation of N.H. Rev. Stat. § 275:57.

**COUNT VIII (IN THE ALTERNATIVE)**
**N.H. REV. ST. § 279:21 – FAILURE TO PAY OVERTIME WAGES**
**(INDIVIDUAL AND CLASS ACTION)**

73. Plaintiff repeats and realleges each and every allegation above as if restated herein verbatim.

74. Plaintiff and other installers routinely worked in excess of forty (40) hours per workweek for ACS.

75. ACS failed to pay Plaintiff and other installers at the rate of one-and-a-half times their regular rate of pay for all hours worked in excess of forty hours weekly as required by N.H. Rev. St. § 279:21.

76. Plaintiff and other installers are entitled to recover the unpaid wages, including liquidated damages and attorney's fees, and costs pursuant to N.H. Rev. Stat. § 279:29.

### COUNT IX (IN THE ALTERNATIVE)
### QUANTUM MERUIT – NEW HAMPSHIRE
### (INDIVIDUAL AND CLASS ACTION)

77. Plaintiff repeats and realleges each and every allegation above as if restated herein verbatim.

78. Plaintiff and other installers have been deprived by ACS of the fair value of their services, as described above, and are, therefore, entitled to recover *in quantum meruit*, the value of their services pursuant to the common law of New Hampshire.

79. Plaintiff and the putative class are entitled to damages in an amount to be proven at trial.

### COUNT X (IN THE ALTERNATIVE)
### UNJUST ENRICHMENT – NEW HAMPSHIRE
### (INDIVIDUAL AND CLASS ACTION)

80. Plaintiff repeats and realleges each and every allegation above as if restated herein verbatim.

81. As a result of ACS's conduct as described above, ACS unjustly enriched itself to the detriment of Plaintiff and other installers in violation of the common law of New Hampshire. Such unjust enrichment includes ACS requiring Plaintiff and other installers to purchase their own worker's compensation insurance, liability insurance, automotive insurance, and the other deductions described above.

82. Plaintiff and the putative class are entitled to damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks this honorable Court to enter the following relief:

a. An Order granting certification of this case as an FLSA collective action and permitting notice to be sent to potential Opt-in Plaintiffs who performed work for ACS in New England;

b. An Order certifying a class of similarly situated individuals pursuant to Fed. R. Civ. P. 23;

c. An award of damages for all unpaid wages, expenditures, costs, deductions, benefits, or other losses resulting from ACS's misclassification, as described above;

d. Restitution of all business expenses born by Plaintiff and the putative class on behalf of ACS, in an amount sufficient to make Plaintiff and the putative class whole;

e. Statutory liquidated damages pursuant to the FLSA;

f. Statutory treble damages pursuant to Massachusetts law, and in the alternative statutory liquidated damages, pursuant to New Hampshire law;

g. Prejudgment interest to the fullest extent permitted under law;

h. Attorneys' fees and costs; and

i. Such other legal and equitable relief as the Court deems just and proper.

        Respectfully submitted,

        HUMBERTO VIEIRA, Plaintiff,
        on behalf of himself and all
        others similarly situated,

        By their Attorneys,

        /s/ Harold L. Lichten_____
        Harold L. Lichten, BBO# 549689
        Thomas P. Fowler, BBO# 688521
        LICHTEN & LISS-RIORDAN, P.C.
        729 Boylston St., Suite 2000
        Boston, MA  02116
        (617) 994-5800
        hlichten@llrlaw.com
        tfowler@llrlaw.com

Date: October 22, 2019